IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


NICOLE C.,[1]                                              No. 6:21-cv-1526-MO

                         Plaintiff,                        OPINION & ORDER

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                         Defendant.


MOSMAN, District Judge:

        This matter comes before me on Plaintiff Nicole C.'s Complaint [ECF 1] against

Defendant Commissioner of the Social Security Administration. For the reasons given below, I

AFFIRM the Commissioner's decision and DISMISS this case.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

## PROCEDURAL BACKGROUND

On July 8, 2019, Plaintiff applied for Supplemental Security Income ("SSI") under Title

XVI of the Social Security Act, alleging disability beginning February 3, 2019. Tr. 236-57, 61-

62. The Social Security Administration ("SSA") denied her claim initially and upon

reconsideration. Tr. 166-70, 175-78. Plaintiff appeared and testified at a hearing held on March

10, 2021, before Administrative Law Judge (ALJ) Matthew Kawalek. Tr. 36-60. On March 30,

2021, the ALJ issued a decision finding that Plaintiff had not been under a disability at any time

from the alleged onset date through the date of the decision. Tr. 10-35. Plaintiff filed an appeal,

and the Appeals Council denied review. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

(SGA) since July 8, 2019, the application date. Tr. 15. At step two, the ALJ determined that

Plaintiff had the following severe impairments: polyposis syndrome status post ileostomy; mild

degenerative disc disease of the lumbar spine; asthma; morbid obesity; major neurocognitive

disorder; an affective disorder (variably called major depressive disorder, depressive disorder,

depression, adjustment disorder, and dysthymia); an anxiety disorder (variably called anxiety or

generalized anxiety disorder); borderline intellectual functioning/intellectual disability; and

posttraumatic stress disorder ("PTSD"). Tr. 15. At step three, the ALJ found no impairment that

met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix

1. Tr. 17. The ALJ assessed Plaintiff's residual functional capacity ("RFC") to:

> perform a reduced range of light work as defined in 20 CFR 416.967(b) in that the
> claimant can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds.
> She can stand and/or walk 6 hours and sit 6 hours of an 8-hour workday. The
> claimant can never climb ladders, ropes, or scaffolds, and she can occasionally
> stoop, kneel, crouch, crawl, or climb ramps and stairs. She can tolerate frequent
> exposure to pulmonary irritants and can have no exposure to hazards, including

unprotected heights. Mentally, she is limited to understanding, remembering, carrying out, and maintaining attention and concentration on no more than simple tasks and instructions, defined specifically as those job duties that can be learned in up to 30 days' time. She can sustain only ordinary routines and make no more than simple, work-related decisions. She can tolerate no more than occasional interaction the general public.

Tr. 19.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 28. At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the claimant can perform such as document scanner, garment sorter, and hotel housekeeper. Tr. 29. The ALJ therefore found Plaintiff not disabled. Tr. 29.

## LEGAL STANDARD

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation ... the ALJ's conclusion ... must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Plaintiff raises three issues with the ALJ's decision. Plaintiff argues the ALJ erred by (1) erroneously discounting her symptom testimony, (2) erroneously discounting lay witness testimony, and (3) improperly rejecting relevant medical opinions. I address these issues in turn.

204a9ac8eaa18eb7

I.      **Subjective Symptom Testimony**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL

5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom

evaluation. *Molina v. Astrue*, 674 F.3d 114, 1112 (9th Cir. 2012) (superseded on other grounds).

First, the ALJ determines whether there is "objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other symptoms alleged."

*Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there

is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in

order to reject the claimant's testimony about the severity of the symptoms." *Id.*

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient."

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "An ALJ does not provide specific, clear,

and convincing reasons for rejecting a claimant's testimony by simply reciting the medical

evidence in support of his or her residual functional capacity determination." *Brown-Hunter v.

Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the

testimony she or he finds not to be credible and must explain what evidence undermines the

testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50

F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the

reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

At the hearing, Plaintiff testified to memory deficits. Tr. 44-45, 49-50. Her last job as a

janitor ended because of memory issues, neck pain, leg pain, and problems with her ostomy bag.

Tr. 44-45. Her ostomy was extremely painful, and she never knew when the valve would come

off and leak. Tr. 45. She typically had to change her bag every other day. Tr. 46. Her bag broke

and leaked stool about five times a week. Tr. 46. She had lived with her boyfriend for two years.

Tr. 47. Her brother and mother also previously lived with her. Tr. 47. Her mother now visited

regularly to check on her wellbeing. Tr. 47-48. She had been trying to get in to see a psychiatrist.

Tr. 48. She heard voices that could be negative and tell her to self-harm. Tr. 48. It was

overwhelming and impacted her ability to complete tasks. Tr. 49. She had a fear of leaving

home. Tr. 51. She sometimes enjoyed sitting outside near her plants. Tr. 52. She cut weeds with

scissors to help her anxiety. Tr. 53.

In a written function report, Plaintiff reported that she could not stand for long without

pain. Tr. 281. She had to frequently change her ostomy bag. Tr. 281. She experienced daily

PTSD symptoms; it was "horrible being in a car." Tr. 281. She felt weak and was always in pain.

Tr. 281. She had to "[g]o to bathroom a lot." Tr. 281-82. She was able to prepare microwaveable

meals. Tr. 282-83. She needed reminders to do personal grooming tasks and take and refill her

medications. Tr. 283. She was able to fold laundry. Tr. 284. She needed encouragement to do

household chores. Tr. 284. She had an emotional support animal to help "pull [her] out of"

flashbacks. Tr. 284. She was able to grocery shop with help. Tr. 284. Her impairments impacted

her ability to lift, squat, bend, stand, walk, kneel, climb stairs, remember things, complete tasks,

concentrate, understand, follow instructions, and get along with others. Tr. 286. She could not lift

more than fifteen pounds. Tr. 286. She had a short attention span. Tr. 286. She did not handle

stress or changes in routine well. Tr. 287. She had a fear of cars and loud voices. Tr. 287.

The ALJ found Plaintiff's medically determinable impairments could reasonably be

expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 20.

However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and

limiting effects of her symptoms were not entirely consistent with the medical evidence and

other evidence in the record. Tr. 20. Specifically, the ALJ found Plaintiff's symptom allegations

were inconsistent with objective medical evidence, and that Plaintiff's daily activities conflicted with her symptom allegations. Tr. 20.[2]

### A. Objective Medical Evidence

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). A claimant's failure to report symptoms to providers is another valid basis to find a claimant's symptom allegations unreliable. *Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006).

Concerning Plaintiff's testimony about her ostomy, the ALJ reasonably discounted these allegations as inconsistent with the record. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). At the hearing, Plaintiff testified that that she had extreme difficulty with her ostomy, testifying that her bag broke "about five times a week." Tr. 46. The ALJ juxtaposed this allegation with evidence of physical examinations that were "generally

---

[2] Defendant also tries to bolster the ALJ's conclusion with the impermissible argument that Plaintiff's conservative treatment did not match up with her allegations of mental health issues. Def. Br., ECF No 14 at 11-12. Even if this were a compelling reason, the Court considers only those reasons relied upon by the ALJ, not Defendant's *post hoc* rationalizations. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (stating the court "is constrained to review the reasons the ALJ asserts"). Because that rationale was not part of the ALJ's analysis, the Court will not consider it at Defendant's invitation.

unremarkable, and scant evidence of complications with her ostomy" during the relevant period.
Tr. 21. Years prior to her alleged disability, there were some reports of Plaintiff having difficulty
maintaining the seal on her ostomy bag (*see, e.g.,* Tr. 682), but abdominal examinations in 2019
(during the relevant period), routinely showed normal objective examination findings regarding
her abdomen and ostomy bag, and Plaintiff did not report ongoing difficulties with her bag
leaking or breaking. *See* Tr. 873 (normal abdominal findings), 878-83 (Plaintiff reporting
bloating, but no mention of leaks and physical examination was normal); Tr. 900 (no concerns
for leaking on abdominal examination); Tr. 1022-26, 1359-60 (no reported issues with any
leaking or breaking with her bag and objective abdominal examination was normal). In January
2020, Plaintiff requested an increase in her ostomy supplies, needing to change her bag
somewhat more often because of interference with a scar and increased activity, but she did not
complain of bags constantly leaking or breaking. Tr. 1479. Objective findings revealed no
concerns. Tr. 1490. She had normal physical examination in April 2020, though she reported
feeling uncomfortable in her abdomen "but only when she eats." Tr. 1680. In November 2020,
Plaintiff's doctor noted Plaintiff had followed up with a gastroenterologist since receiving her
ileostomy bag, and at this appointment Plaintiff reported no concerns with how her ileostomy
bag functioned. Tr. 1636. Plaintiff's gastroenterologist recorded normal findings in February
2021. A few days later, he performed an ileoscopy which revealed no major concerns, and
showed that Plaintiff's condition was stable. Tr. 1751-52. These many unremarkable reports
amount to substantial evidence supporting the ALJ's decision to discount Plaintiff's testimony
about her ostomy bag breaking several times a week because it conflicted with the record
evidence.

The ALJ also reasonably identified objective medical evidence that clashed with

Plaintiff's allegations of constant pain, difficulty standing and walking, and cognitive difficulties.

Tr. 21. For example, Plaintiff alleged she was "in pain always" (Tr. 281) and had difficulty

standing and walking and decreased strength. Tr. 286. The ALJ concluded the record conflicted

with this testimony, identifying numerous objective records showing that Plaintiff walked

normally, and she had intact strength. Tr. 21; (citing, e.g., Tr. 873, 883, 900, 909,1734, 1747).

Concerning Plaintiff's cognitive difficulties, the ALJ acknowledged that Plaintiff "alleged she

struggled with memory problems since her accident" but cognitive testing did not reveal

difficulty with memory. Tr. 18. For example, during a mental status examination in November

2019, Plaintiff demonstrated entirely normal memory, attention, knowledge, thought content,

speech, judgment, affect, and attitude. Tr. 1107. Notes thereafter continued to show benign

findings and undermined her allegations of debilitating mental limitations. *See* Tr. 1419 (normal

mental status exam despite complaints of anxiety); Tr. 1578 (same); Tr. 1592 (normal mental

status exam despite reports of recent depression that was improving); 1597 (normal mental

status); 1601-02 (same). The ALJ nevertheless acknowledged that Plaintiff's symptoms could

"impact her ability to [maintain] concentration, persist, or maintain pace" and thus restricted her

to jobs with only simple tasks and instructions, while discounting her testimony about memory

and attention. Tr. 27. This was a clear and convincing reason, supported by substantial evidence

for the ALJ to rely upon to discount Plaintiff's testimony about pain, difficulty standing and

walking, and cognitive difficulties.

*B. Daily Activities*

The ALJ also discounted Plaintiff's subjective symptom testimony because it was

inconsistent with her daily activities. Tr. 21. Activities of daily living can form the basis for an

ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

The ALJ reasonably concluded that several of Plaintiff's daily activities conflicted with her testimony about physical limitations and difficulty getting along with others. To discount a Plaintiff's testimony, and ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. The ALJ contrasted Plaintiff's testimony that even expending minimal energy cutting weeds from a chair in her garden her usually resulted in her "overdo[ing] it" (Tr. 53) with treatment notes from October 2020 showing that Plaintiff spent "much time working on her garden and building a fence" and reported "doing well." Tr. 21, 23 (citing Tr. 1602). Plaintiff was also able to care for her brother in February 2020 after he had surgery (Tr. 22, citing Tr. 1474), and in July 2020, Plaintiff reported "staying active by keeping the house clean, planting flowers, and taking care of her pets." Tr. 23, citing Tr. 1597. Furthermore, in December 2020, Plaintiff reported working out more and her provider simply recommended that she use her inhaler before exercising. This evidence undermined Plaintiff allegations that pain kept her from doing things (Tr. 310); that aside from folding laundry, she was in too much pain and was too weak to do house or yard work (Tr. 284); and her exercises involved nothing more than stretching in a chair (Tr. 50). The ALJ

9 – OPINION & ORDER

also highlighted evidence showing that Plaintiff developed and maintained a relationship with her boyfriend and then fiancé during the relevant period, and providers routinely noted that Plaintiff appeared cooperative. Tr. 18, 47, 1107, 1132. This conflicted with Plaintiff's claims that she had difficulty getting along with others (Tr. 286), and supported only moderate limitations with personal interaction. Tr. 18. This was another clear and convincing reason for the ALJ to rely upon to discount Plaintiff's testimony about the extent of her physical and mental health issues.

## II.    Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported

reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122

Plaintiff's mother reported that Plaintiff needed to constantly tend to her ostomy bag. Tr. 289. Her memory was poor, and she experienced constant pain. Tr. 289, 339. She had difficulty walking, climbing stairs, and lifting more than ten pounds. Tr. 339. Her conditions affected her ability to sleep. Tr. 290, 340. She needed reminders to take her medications and to attend appointments. Tr. 291, 341. She was able to put away laundry but had to avoid household chores that involved lifting and bending. Tr. 291, 341. She did not drive. Tr. 292, 342. She was limited in what she could do socially; traffic in large towns stressed her out. Tr. 293, 340. At times, she needed reminders to go places and for someone to accompany her. Tr. 293, 342. Her conditions affected her ability to lift, squat, bend, climb stairs, walk, stand, kneel, reach, talk, understand, remember, follow instructions, complete tasks, and concentrate. Tr. 294, 344. Her ability to pay attention varied. Tr. 294, 345. She rarely finished what she started. Tr. 294, 345. She sometimes needed spoken instructions to be repeated, and she needed help to follow written instructions. Tr. 294, 345. She did not handle stress well. Tr. 295, 346. She did not go out very often. Tr. 344..

The ALJ failed to analyze the lay witness testimony, but any error in failing to do so was harmless. Plaintiff's mother alleged similar limitations regarding Plaintiff's ostomy, anxiety, and other limitations associated with her mental health. *Compare* Tr. 38-45 (Plaintiff's testimony) *with* Tr. 289-344 (Plaintiff's mother's testimony). As discussed above, the ALJ provided legally sufficient reasons for concluding that Plaintiff's testimony was unpersuasive. These reasons apply with equal force to the lay witness testimony. Any error in rejecting the lay witness testimony was therefore harmless. *Molina,* 674 F.3d at 1117, 1122.

11 – OPINION & ORDER

### III.    Medical Opinion Evidence

For disability claims filed on or after March 27, 2017, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The 2017 regulations eliminated the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the 2017 regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2-3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(b). The court must, moreover, continue to consider whether the ALJ's

12 – OPINION & ORDER

analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792

("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's

opinion as unsupported or inconsistent without providing an explanation supported by substantial

evidence.").

   *A. Dr. Katharine Warner, Ph.D.*

   In 2017, Plaintiff began reporting difficulty with memory and producing speech. Tr. 375.

She was easily frustrated and emotional. Tr. 375. Her symptoms began after two motor vehicle

accidents. Tr. Plaintiff experienced nightmares about the accidents. Tr. 376. She felt unsafe in

cars and experienced severe anxiety. Tr. 376. She would grind her teeth and feel faint when

anxious. Tr. She was distant from other people and had difficulty being in public. Tr. 376. She

endorsed intrusive memories of her accident. Tr. 376. Certain sounds were triggering. Tr. 376.

She felt depressed. Tr. 376. She reported a history of childhood sexual abuse. Tr. 376. She had

attended community college, but she had to drop out after her last motor vehicle accident, which

had impacted her memory, focus, and emotions. Tr. 377. She struggled with reading, spelling,

writing, and math. Tr. 377. She had to close her eyes when trying to concentrate. Tr. 377. She

had trouble sleeping due to flashbacks of her accidents. Tr. 377. Memory issues interfered with

her ability to engage in activities of daily living. Tr. 378. She tended to forget things, such as

items at the grocery store, or telling her doctor about symptoms she experienced. Tr. 378. Her

mother drove her everywhere because of her trauma reactions. Tr. 378. Her mother also

reminded her to attend appointments. Tr. 378. Depression and anxiety interfered with her ability

to function. Tr. 378. She was easily angered. Tr. 378.

   Vocational rehabilitation referred Plaintiff to Dr. Katharine Warner, Ph.D. for a

neuropsychological evaluation. Tr. 375. Dr. Warner conducted a clinical interview; collected and

reviewed relevant history; and administered several psychometric tests, including the Wechsler

Intelligence Scale for Adults – Fourth Edition ("WAIS-IV"), the Repeatable Battery for

Assessment of Neuropsychological Status – Update ("RBANS"), and the Wide Range

Achievement Test – 4 ("WRAT-4"). Tr. 375.Dr. Warner noted that Plaintiff had noticeably slow

speech that appeared to be labored. Tr. 376. She moved in a slow manner. Tr. 376. She was able

to follow instructions and was cooperative. Tr. 376. The WAIS-IV revealed a full-scale IQ score

of 75. Tr. 378, 381. The WRAT-4 demonstrated low average scores in reading and spelling. Tr.

378, 381. The RBANS placed Plaintiff in the impaired range in visuospatial/constructional

abilities. Tr. 378. Her immediate memory was in the borderline range; her delayed memory was

impaired. Tr. 378, 381. She demonstrated low average to borderline ability to attend. Tr. 379.

Dr. Warner diagnosed borderline intellectual functioning, rule-out intellectual disability;

major neurocognitive disorder due to TBI; PTSD; and depressive disorder due to another

medical condition. Tr. 379. She recommended adaptive functioning testing to determine if

Plaintiff met the criteria for intellectual disorder. Tr. 380. She opined, "If [Plaintiff] does have an

intellectual disability, she should work in a sheltered work setting. This type of setting would

prove to be less stressful for [Plaintiff] and will be more tailored to meet her abilities." Tr. 380.

Dr Warner further opined that if Plaintiff did not meet the criteria for an intellectual disability,

she would still need to work with a job coach because of her borderline intellectual functioning.

Tr. 380. Dr. Warner recommended that tasks be demonstrated for Plaintiff. Tr. 380. When

providing her with instructions, trainers should speak slower and check in with Plaintiff after a

delay to determine whether she had retained the information. Tr. 380. Dr. Warner also

recommended that Plaintiff be allowed to take breaks as needed due to her low frustration

tolerance. Tr. 380. She concluded that Plaintiff's prognosis was "guarded," and that "[s]he will

204a9ac8eaa18eb7

likely continue to have significant deficits in her delayed memory and have difficulty retaining new information." Tr. 380.

Dr. Warner assessed moderate limitation in Plaintiff's ability to carry out very short and simple instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; ask simple questions or request assistance; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others. Tr. 384.

Dr. Warner assessed marked limitation in Plaintiff's ability to remember locations and work-like procedures; understand and remember very short and simple instructions; understand, remember, and carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and travel in unfamiliar places or use public transportation. Tr. 383-84. Dr. Warner opined that Plaintiff's disability began around 2013. Tr. 384. Dr. Warner assessed marked impairment in Plaintiff's ability to maintain activities of daily living; social functioning; and concentration, persistence, and pace. Tr. 385.

15 – OPINION & ORDER

The ALJ found Dr. Warner's opinion unpersuasive. Tr. 20. He rejected her "one-time exam findings of the claimant, which was conducted over two years prior to the application date" because it was inconsistent with evidence of the claimant's general lack of mental health psychotherapy or acute hospitalizations, or abnormal mental status exam findings since the application date. Tr. 27.

Regarding "supportability," the ALJ adequately discussed the strength of the evidence underlying Dr. Warner's opinion when finding it unpersuasive. The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). First, the ALJ reasonably found Dr. Warner's one-time examination from February 2017 was less persuasive because it happened two years before the February 2019 alleged onset date, and did not provide opinions about whether Plaintiff's conditions would persist. Tr. 238; *see Osmore v. Astrue,* 472 F. App'x 529, 532 (9th Cir. 2012) (explaining that "out-of-date" evidence from before the date of the pending disability application is not probative of subsequent disability status). The ALJ also reasonably discounted Dr. Warner's assessment of marked limitations as inconsistent with the medical record.[3] For instance, without explanation, Dr. Warner checked boxes indicating that Plaintiff was both markedly limited in her ability to understand and remember even "very short and

---

[3] Plaintiff contends Defendant's argument "that the ALJ properly discounted Dr. Warner's opinion because she used a checkbox form without sufficient explanation" is an impermissible *post hoc* rationalization because the ALJ did not identify it as a basis for finding Dr. Warner unpersuasive. Pl. Reply, ECF No. 15 at 5. Not so. Neither defendant, nor the ALJ, dismissed Dr. Warner's opinions solely because they were issued in check-box form, but rather because "the claimant's general lack of mental health psychotherapy or acute hospitalizations, or abnormal mental status exam findings since the application date is inconsistent with Dr. Warner's opinion." Tr. 27; *see also* Def. Br at 5-6 (noting inconsistencies between Dr. Warner's opinions--found in the check-box portion of her report--and the medical record).

simple instructions" (Tr. 383), yet found she was only moderately limited in her ability to carry

out those same short and simple instructions. Tr. 384. In contrast to Dr. Warner's suggestion that

Plaintiff had marked limitations understanding and remembering short simple instructions, Dr.

Warner's mental status exam found that Plaintiff "was able to follow instructions." Tr. 376. Dr.

Warner also checked a box suggesting that Plaintiff was markedly limited in her ability to get

along with co-workers or peers without exhibiting behavioral extremes (Tr. 384), yet Dr. Warner

found Plaintiff was cooperative (Tr. 376), and she pointed to no objective markers that Plaintiff

had significant personality or behavioral deficits to support the check-box opinion. Even Plaintiff

acknowledged that she got along with authority figures, such as bosses, "just fine." Tr. 316. The

ALJ adequately considered the supportability of Dr. Warner's opinion by examining the bases

for her conclusions, and discounting them for their inconsistency and lack of thoroughness.

The ALJ also adequately addressed the consistency of Dr. Warner's opinion when

finding it unpersuasive. The consistency factor requires the ALJ to assess medical opinions'

alignment with "evidence from other medical sources and nonmedical sources in the claim." 20

C.F.R. § 404.1520c(c)(2). The ALJ noted that the lack of abnormal mental status examination

findings since the application date (not to mention the lack of psychotherapy treatment) was

inconsistent with Dr. Warner's assessment. Tr. 27. For instance, Dr. Warner found during her

examinations that Plaintiff had impaired functioning in delayed memory consistent with a

neurocognitive disorder (Tr. 378), yet mental status examination during the relevant period

showed that Plaintiff had normal cognitive function, including adequate memory. Tr. 1107.

Similar findings also reflected no attention deficits (Tr. 1107), which was at odds with Dr.

Warner's 2017 assessment that Plaintiff had marked difficulty maintaining concentration and

persistence (Tr. 384). And in contrast to Dr. Warner's suggestion that Plaintiff was markedly

limited in her ability to work without exhibiting behavioral extremes (Tr. 384), mental status examination findings from the relevant period show that Plaintiff was "[f]riendly [and c]ooperative" and providers routinely noted that Plaintiff had a normal mood and was pleasant during appointments, with normal mental functioning even when she reported feeling anxious or depressed. *See, e.g.,* Tr. 1107, 1360. The Court finds that the ALJ sufficiently addressed the consistency and supportability factors, and supported his decision to discount Dr. Warner's opinion with substantial evidence.

### CONCLUSION

For the reasons given above, I AFFIRM the Commissioner's decision and DISMISS this case.

IT IS SO ORDERED.

DATED:    2/8/2024            .

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge